UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

SERLANDING KEITH CROWLEY,

        Plaintiff,

v.

M. LEACH et al.,

        Defendants.
_____/

Case No. 2:23-cv-135

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner.

**I.**     **Procedural History**

Plaintiff Serlanding Keith Crowley signed his complaint on June 30, 2023. (Compl., ECF No. 1, PageID.4.) The Court received it on July 20, 2023. The Court then entered an order (ECF No. 4) staying the case and referring it to the *Pro Se* Prisoner Civil Rights Early Mediation Program. The dispute was mediated on June 26, 2024, but did not settle at early mediation. (ECF No. 12.) Thereafter, on July 1, 2024, Magistrate Judge Phillip J. Green conducted a settlement conference. A report was filed indicating that the parties had reached a settlement in full. (ECF No. 13.) On the strength of that report, the case was dismissed as settled on July 8, 2024. (ECF No. 14.)

Eight months later, Plaintiff contacted the Court and inquired regarding the status of his case. (ECF No. 15.) The Clerk of Court responded with a copy of the docket sheet and advised Plaintiff that the case was closed on July 8. (*Id.*) Two months later, Plaintiff advised the Court that

the case had not settled. (ECF No. 16.) The Court construes Plaintiff's most recent correspondence as a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(1).

## II.     Relief from Judgment

Rule 60(b)(1) provides that the Court may relieve a party from a final judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). Here, Plaintiff claims that the judgment is based on a mistaken conclusion that the matter was settled. The Court has reviewed the recording of the July 1, 2024, proceedings that purportedly settled the dispute. That review confirms Plaintiff's assertion that the parties did not reach a settlement. Accordingly, the Court will grant Plaintiff's motion for relief from judgment and vacate the order of dismissal (ECF No. 14), as well as the erroneous mediation report (ECF No. 13). The Court will direct the Clerk to reopen this case.

## III.    Collection of the Filing Fee

The Court previously granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 4.) Because of the purported settlement, however, the Court did not order collection of the filing fee. Because the case did not settle, Plaintiff is responsible for paying the entire $350.00 filing fee in installments, in accordance with 28 U.S.C. § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled in other part by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *Hampton v. Hobbs*, 106 F.3d 1281 (6th Cir. 1997). Plaintiff must pay the filing fee through monthly payments of 20 percent of the preceding month's income credited to Plaintiff's prison trust fund account. *See* 28 U.S.C. § 1915(b)(2). Accordingly, each month that the amount in Plaintiff's trust account exceeds $10.00, the agency having custody of Plaintiff shall collect 20 percent of the preceding months' income and remit that amount to the Clerk of this Court. The agency shall continue to collect monthly payments from Plaintiff's prisoner account until the entire filing fee is paid.

2

IV.     **Consent to Magistrate Judge Jurisdiction**

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.) This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court

3

screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

## V.     Review Under the PLRA

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see*

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will partially dismiss Plaintiff's complaint as detailed below.

### A.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MBP Captain/Correctional Officer M. **Leach**, **MBP**, MBP Assistant Deputy Warden Unknown **Viitala**, MBP Captain Unknown **Sebly**, MBP Lieutenant Unknown **Schroderus**, and MBP Correctional Officers Unknown **Watson** and Unknown **Giotto**. (Compl., ECF No. 1, PageID.1–2.) Plaintiff does not specify the capacity in which he sues Defendant Leach, but he sues the other individual Defendants in their respective official capacities only. (*Id.*)

Plaintiff contends that he has "been having retaliation problems" with Defendant Leach for 3 years. (*Id.*, PageID.3.) Plaintiff wrote a grievance about Defendant Leach, and Defendant Leach told Plaintiff, "We'll see who has the best penmanship[;] I'll make sure you never go home." (*Id.*) According to Plaintiff, Defendant Leach has taken Plaintiff's phone privileges for 2 years, and his JPay privileges for 90 days. (*Id.*)

Plaintiff explained the situation to Defendant Viitala, who said, "I see what's going on I'm going to get you out of here." (*Id.*) According to Plaintiff, Defendant Viitala instead assisted Defendant Leach by "sending his subordinates" to issue false misconduct reports to Plaintiff. (*Id.*) Plaintiff states these subordinates include Defendants Schroderus and Giotto, as well as non-parties

5

Lieutenant Neubecker, Sergeant Vrabel, Lieutenant Minthorn, Sergeants Ogle and Vanacker, and Officers Gregurash and Koski.[2] (*Id.*)

Plaintiff reports that he submitted Prison Rape Elimination Act (PREA) complaints against Defendants Leach and Schroderus. (*Id.*) He claims that "they've been retaliating ever[] since 2021[;] they've even hosted hearings." (*Id.*) Plaintiff contends that their actions "void any department hearings" and that such hearings could not be conducted pursuant to MDOC policies and procedures. (*Id.*) According to Plaintiff, Defendant Leach told Defendant Watson that he was "going to keep writing misconducts on that f***er [because] he wrote a PREA on me." (*Id.*)

Plaintiff claims that he has "done an extra 3 [years]" because of the misconduct reports written by Defendant Leach. (*Id.*) He avers that Defendant Leach has conspired with the other Defendants to retaliate against Plaintiff for using the grievance process. (*Id.*) Plaintiff alleges that every time he is scheduled to end a period during which he has been subjected to loss of privileges (LOP), Defendants Leach and Schroderus issue more misconduct reports. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert First Amendment retaliation claims, Fourteenth Amendment procedural due process claims premised

---

[2] Plaintiff does not list the non-party individuals—Lieutenant Neubecker, Sergeant Vrabel, Lieutenant Minthorn, Sergeants Ogle and Vanacker, and Officers Gregurash and Koski—in the caption of his complaint or in the list of Defendants. (Compl., ECF No. 1, PageID.1–2.) Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). And, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against possible non-party individuals responsible for the actions described in Plaintiff's complaint would be properly dismissed for failure to state a claim upon which relief may be granted.

upon the allegedly false misconduct reports, and a civil conspiracy claim. As relief, Plaintiff states that he "just want[s] to go home." (*Id.*, PageID.4.) He also believes he should be "reinstated funds for all the retaliation" that he has faced. (*Id.*)

      **B.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

7

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### C. Claims Against MBP

Plaintiff sues MBP. But MBP is not a separate entity capable of being sued. As this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public entity for suit." *Id*. at *7; *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002); *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued. Rather, it is a building owned by the Michigan Department of Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Furthermore, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, neither the MDOC nor the State of Michigan is a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). And, because MBP is not an entity separate from the MDOC, it is also not a "person" under § 1983. *See, e.g., Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016

8

WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same). Accordingly, for the foregoing reasons, MBP will be dismissed as a Defendant.

### D. Claims Against Defendants Viitala, Sebly, Schroderus, Watson and Giotto

Plaintiff sues Defendants Viitala, Sebly, Schroderus, Watson and Giotto in their official capacities only. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, as noted above, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages and injunctive relief. (Compl., ECF No. 1, PageID.34.) However, regardless of the form of relief requested, Plaintiff may not maintain a § 1983 action against the MDOC. And, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages, so Plaintiff may not seek monetary damages against Defendants Viitala, Sebly, Schroderus, Watson and Giotto in their respective official capacities. Accordingly, for these reasons, Plaintiff's § 1983 claims against Defendants Viitala, Sebly,

9

Schroderus, Watson and Giotto in their official capacities for monetary damages will be dismissed for failure to state a claim on which relief may be granted.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

Plaintiff's request for injunctive relief is straightforward: he asks to be released from prison. (Compl., ECF No. 1, PageID.4 ("I just want to go home.").) Regardless of whether this request for relief is based on any ongoing violation of federal law, the relief he requests may not be granted in this action.

When a prisoner challenges the fact or duration of his confinement, his sole remedy is a petition for habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (discussing that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody); *see also Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of [42 U.S.C.] § 1983."). The Sixth Circuit has elaborated on when a prisoner must use habeas corpus under these authorities:

> A clear and consistent two-part rule emerges from this precedential backdrop. Prisoners can "use only habeas corpus" if "they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson* [*v. Dotson*], 544 U.S. [74,] 81, 125 S. Ct. 1242 [(2005)].

*Kitchen v. Whitmer*, 106 F.4th 525, 539 (6th Cir. 2024). Plaintiff is pursuing the first *Kitchen* option. He explicitly seeks immediate release. That relief is not available under § 1983. Accordingly, Plaintiff has failed to state a claim on which the requested injunctive relief may be granted. Therefore, the Court will dismiss all of Plaintiff's claims against Defendants Viitala, Sebly, Schroderus, Watson and Giotto in their official capacities.

### E.    Claims Against Defendant Leach

Plaintiff does not specify the capacity in which he is suing Defendant Leach. The Court will generously construe Plaintiff's allegation as naming Defendant Leach in his personal and official capacities.

#### 1.    Official Capacity Claims

The reasons stated above that warrant dismissal of Plaintiff's official capacity claims against Defendants Viitala, Sebly, Schroderus, Watson and Giotto apply to Plaintiff's official

11

capacity claims against Defendant Leach as well. Thus, Plaintiff has failed to state an official capacity claim against Defendant Leach on which relief might be granted.

### 2. Personal Capacity Claims

As noted above, the Court construes Plaintiff's complaint as an attempt to state First Amendment retaliation claims, Fourteenth Amendment procedural due process claims premised upon the allegedly false misconduct reports, and a civil conspiracy claim. Each claim is addressed below.

#### a. First Amendment Retaliation

Plaintiff alleges that Defendant Leach retaliated against Plaintiff because he filed grievances against Defendant Leach. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Here, Plaintiff references filing grievances and PREA complaints.[3] (Compl., ECF No. 1, PageID.3.) Plaintiff does not indicate

---

[3] "Congress enacted [the Prison Rape Elimination Act or] PREA with the purpose of implementing standards and policies to prevent prison rape and to 'protect the Eighth Amendment rights of Federal, State, and local prisoners.'" *Does 8-10 v. Snyder*, 945 F.3d 951, 955–56 (6th Cir. 2019) (quoting 34 U.S.C. § 30302 (formerly 42 U.S.C. § 15602)).

12

when he filed these grievances and complaints or their specific nature; however, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff engaged in protected conduct for purposes of his First Amendment claim.

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)

Plaintiff alleges that Defendant Leach either wrote false misconduct reports against Plaintiff or orchestrated the writing of false misconduct reports against Plaintiff. The threat of sanctions that follow a misconduct determination is sufficiently adverse to deter a person from exercising constitutional rights. Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben*, 887 F.3d at 266–67 (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010)) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Therefore, Plaintiff has alleged sufficient facts to show adverse action.

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. Plaintiff alleges that Defendant Leach made statement directly stating that the adverse actions he was taking against Plaintiff were motivated by Plaintiff's protected conduct. At this stage of the proceedings, the Court must take those factual allegations in the complaint as true and in the light

13

most favorable to Plaintiff. Under the present circumstances, although Plaintiff has by no means proven his First Amendment retaliation claims, the Court will not dismiss Plaintiff's retaliation claims against Defendant Leach on initial review.

### b. Fourteenth Amendment Due Process Claims

Plaintiff alleges that the purportedly retaliatory misconduct hearings were conducted in violation of MDOC policy directives thereby denying Plaintiff due process in violation of the Fourteenth Amendment. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's allegations suggest that he had some protectible interest in the MDOC following its own policy directives regarding misconduct hearings. But courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994); *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Thus, to the extent Plaintiff's claim depends on the allegation that Defendant Leach violated prison policy, Plaintiff fails to raise a cognizable federal due process claim.

Nonetheless, Plaintiff's search in the policy directives and regulations for "language of an unmistakably mandatory character" to support a liberty interest is understandable. *Hewitt v. Helms*, 459 U.S. 460, 471 (1983). Under *Hewitt*, it was the presence of such mandatory language in procedural guidelines that might give rise to a protected liberty interest. *Id*. at 469–72. That framework was rejected and replaced in *Sandin v. Conner*, 515 U.S. 472 (1995).

The *Sandin* Court concluded that a prisoner would not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 487. Nothing about Plaintiff's misconduct convictions would inevitably impact the duration of his sentence. For a prisoner like Plaintiff, who is serving sentences for offenses committed during or after 2015,[4] a major misconduct conviction results only in the accumulation of "disciplinary time." Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. Id. § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

Despite the Sixth Circuit's determination that the present MDOC disciplinary scheme does not affect the length of a sentence, Plaintiff alleges that he has served "an extra 3 yrs because of [the] misconducts Captain Leach writes on [Plaintiff]." (Compl., ECF No. 1, PageID.3.) The impact of misconduct convictions on Plaintiff's sentences is a legal question. Plaintiff's statement regarding that impact is a legal conclusion.

---

[4] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=704755 (last visited July 15, 2025).

15

When conducting this initial PLRA review, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The Court rejects Plaintiff's allegation that Defendant Leach's actions in connection with the disciplinary proceedings impacted the duration of Plaintiff's sentences in any way.

Furthermore, Plaintiff does not allege any facts suggesting that his loss of telephone, JPay, or other privileges because of the misconduct reports resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487. The Supreme Court has held that even the far more significant restrictions of segregation "[are] the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

The Sixth Circuit Court of Appeals has concluded that a stay longer than 30 days in segregation is not necessarily considered an atypical or significant hardship, *see Joseph*, 410 F. App'x at 868; *see also, e.g., Jones v. Baker*, 155 F.3d 810, 812–23 (6th Cir. 1998) (two years of

16

segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). In light of that authority, the Court concludes that Plaintiff's restriction of the lesser sanctions of "toplock" and "loss of privileges" are not atypical and significant hardships that might give rise to a protectible liberty interest. Accordingly, Plaintiff has failed to state a Fourteenth Amendment procedural due process claim.

### c.   Civil Conspiracy

Finally, Plaintiff asserts a civil conspiracy claim. Plaintiff alleges, "[n]ow [Defendant Leach has] conspired with his subordinates to retaliate against {Plaintiff . . . for using the grievance process." (Compl., ECF No. 1, PageID.3.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory

17

allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff provides no allegations regarding any agreement among any of the named Defendants. The entirety of Plaintiff's conspiracy claim is his statement that Defendant Leach conspired with his subordinates. Plaintiff's allegation of conspiracy is wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendants shared a conspiratorial objective. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Thus, Plaintiff has failed to state a conspiracy claim with the required particularity upon which relief may be granted.

## Conclusion

This action was dismissed on July 8, 2024, because of a clerical error. The Court will grant Plaintiff's motion for relief from judgment. (ECF No. 16.) The July 1, 2024, report of early mediation (ECF No. 13) and the order dismissing case (ECF No. 14) will be vacated. The agency holding Plaintiff in custody will be directed to collect the filing fee.

Having conducted the review required by the PLRA, the Court determines that Plaintiff's claims against Defendants MBP, Viitala, Sebly, Schroderus, Watson and Giotto will be dismissed

for failure to state a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Additionally, any intended official capacity claims, Fourteenth Amendment due process claims, or civil conspiracy claims against Defendant Leach will be dismissed for failure to state a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims against Defendant Leach in his personal capacity remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 5, 2025                              /s/ *Maarten Vermaat*
                                                     Maarten Vermaat
                                                     United States Magistrate Judge